**UNITED STATES v. 10, MORE OR LESS, DIGGER MACHINES, etc.**

**UNITED STATES v. 9, MORE OR LESS, DIGGER MACHINES, etc.**

Nos. 8287(2), 8288(2).

United States District Court
E. D. Missouri, E. D.

June 9, 1952.

George L. Robertson, U. S. Atty., and Marvin C. Hopper, Asst. U. S. Atty., both of St. Louis, Mo., for plaintiff.

Melvin W. Trotier, East St. Louis, Ill., and John Godlewski, St. Louis, Mo., for claimant.

HULEN, District Judge.

In these two cases plaintiff has seized a number of "Digger Machines" (10 in case 8287, and 9 in case 8288), under Public Law 906, 81st Congress, 2d Sess., § 7, 15 U.S.C.A. § 1177. By stipulation, the sole question now in issue is whether the machine comes within Section 1(a) (2) of the Act, 15 U.S.C.A. § 1171(a) (2):

> "(a) The term 'gambling device' means—
>
> \* \* \* \* \* \*
>
> "(2) any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; \* \* \*."

The machine is similar to that shown, described and held to be a gambling device in Boosalis v. Crawford, 69 App.D.C. 141, 99 F.2d 374, 376, except the devise in the cases under inquiry uses colored gravel on the floor and not candy. Describing the "Digger Machine" in the Boosalis case, the Court said:

> "Set upon the candy are items of merchandise such as kodaks, wrist watches, safety razors, clocks. Operation of such a machine, when carried on by a player according to the printed directions, is as follows: The player turns the locator-handle at the right center of the machine to the right or left with the effect of moving the boom and the claw so that the latter will be suspended at a point in the vicinity of a desired article. He then inserts a nickel in the aperture at the left center of the machine. This causes an electric motor to commence operating and the following move-

,ments occur: first, the boom moves forward; second, the claw drops down, spreading as it touches an object; third, the claw returns upward, closing as it does so; fourth, the boom moves backward, carrying the claw to a position over a chute located in the prow of the ship; fifth, the claw drops and opens. If the claw descends upon an article it may grasp the same in its closing and upward movement and carry and deposit it in the chute. When this occurs, the player, by pulling out the receptacle in the center of the machine, obtains the article."

Substantially the same operations are made by the device here in issue. One device is manually started after giving the caretaker a "dime". Originally it worked by inserting a coin in a slot but that feature was eliminated to "escape payment of a tax." There is some slight difference, but not significant, in the ability of the operator to move the boom in the machines in each of the cases before this Court. It also appears that control by the operator goes a degree further, but again not material, in the cases for ruling than in the Boosalis case.

A finding of the Boosalis case is applicable to the devices before the Court:

"* * * Suffice it to say that in respect of a player operating a machine according to directions, the evidence was uncontroverted that, except to the extent that he could, by turning the locator-handle, suspend the claw in the vicinity of a desired article, the operation of the machine was beyond his control. It was further uncontroverted that even if the claw were suspended immediately over an article, 'there are chances that the claw may not strike the article * * *, that if it does strike the article, it may not grip the article, or, having gripped the article, that it may slip off, without in any way moving the article, or that, if it does lift the article, the article may drop off before reaching the chute, or may be knocked off by some other articles in the way.' "

Intervenor claims the machines are constructed so as to make success solely the result of skill. If this is true the libelant cannot prevail.

Intervenor has called our attention to the case of "24 Digger" Machines, Number 495, decided by the District Court for the Western District of Arkansas. It is apparent the record in the case before the District Court of Arkansas is not the same as the record now before this Court. The District Court for Arkansas found:

"* * * the insertion of the coin, token or similar object did not automatically set the machine or device in operation. It merely engaged the mechanism *and the operation of the device was left entirely to manipulation by the operator* or customer. As originally designed and manufactured, there was nothing automatic about the device other than the mere placing in gear the machinery for operation by the customer after the coin was deposited.

* * * * * *

"The operation and the result of the operation depended entirely upon the skill of the customer and no operation of the machine was controlled in any manner by the machine itself or by any mechanism attached thereto." (Emphasis added.)

Intervenor in the cases before this Court admits that beyond a certain point, and short of a successful operation or securing of a prize, each of the machines proceeds on its own power independent of any attempt or power to control by the operator or customer.

The libelant's witness was an agent for the Federal Bureau of Investigation. He testified to operating one of each kind of machine about fifty times, and notwithstanding his efforts at "skill" he secured a prize only five times. He explained in detail the point where control ended and chance began, and the slips between contact by the digger with a prize and delivery of the prize successfully to the hopper or chute for possession of the operator. Even in the comparatively few

times he was successful, there is no substantial evidence on which to conclude success came from skill rather than chance. Obtaining a prize depends on many things beyond the control of the operator, but within the control of the exhibitor. To mention a few: The depth in the gravel to which the prizes are placed; the shape of the prizes and their location on or in the bed of gravel; and the relation to other prizes. For illustration, the intervenor, with many years of experience, was asked to demonstrate, on a machine in the court room, how skill played its part. A fountain pen near a wall and beside a compact was designated. The intervenor first sought to remove the compact. On his first attempt the digger dropped over the compact but in spite of the skill of the operator did not grasp the compact. On a second try a successful contact was made. After the compact was removed the pen was removed on the first try. There is nothing in the directions about location, such as here demonstrated, having anything to do with the "chance" or "skill" of making a contact with the desired prize.

The intervenor stated, generally, the per cent of cost of prizes was thirty to forty per cent of the "take", or income.

The demonstration of the intervenor evidences that one with years of experience does, by skill, have a better than even chance of success, but it also leads to the conclusion that if all operators had the skill in operation of the intervenor, he would go bankrupt in a very short time. The record also leads to the conclusion that the cost of education to the point of being a skilled operator protects the owner from the hazard of loss through skill.

This device impresses this Court as a machine, subject to and cunningly equipped, providing just enough control in the customer to entice those who attend carnivals and street fairs to try to get something for comparatively nothing, under the illusion that it is a game of skill and not one of chance. They are on display for the enticement, not of experts with years of experience, but for the usual carnival frequenter. They are in fact and for all practical purposes, i. e. profit to owner and loss to operator or public, a game of chance.

The statute here is novel. It is doubtful if it requires that chance predominate over skill. The language is—

"* * * when operated it may deliver, as the result of the application of *an element of chance,* any money or property". (Emphasis added.)

That the device has "elements" of chance, we think too plain for argument. It is further our conclusion that chance predominates over skill.

The machines described in the libel and exhibited in court are gambling devices as defined in Public Law 906, 81st Congress, 2d Sess., § 1(a) (2).

Libelant may submit decree in accordance with the above findings and conclusions.