**UNITED STATES of America,**
**Plaintiff,**

**v.**

**James B. HUNT and Gopher Sales**
**Company, Defendants.**

**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Harold A. OLLHOFF and Gopher Sales**
**Company, Defendants.**

**Cr. Nos. 7980, 7988.**

United States District Court
D. Minnesota, Third Division.

Nov. 6, 1956.

George E. MacKinnon, U. S. Atty., St. Paul, Minn., for plaintiff.

Ray G. Moonan and Harry E. Ryan, Minneapolis, Minn., for defendants.

DONOVAN, District Judge.

These two proceedings are before the Court on defendants' motion in each case to dismiss the indictments herein on the ground that they "do not state an offense."

The indictments are substantially the same for present purposes. They charge the defendants with maintaining and operating within a certain place and premises occupied by them "a so-called 'slot' machine of the pinball type, which operated by means of insertion of a five (5) cent coin and which by application of the element of chance did entitle the person playing and operating the machine to receive cash, premiums and merchandise from the defendants, and said defendants did then and there and in the manner aforesaid engage in and carry on a trade and business subject to tax imposed by the Internal Revenue Code of 1954, Section 4461(2) * * * and Section 4901 * * * all in violation of the

Internal Revenue Code of 1954, Section 7203."

The applicable statutes are as follows (all references are to the Internal Revenue Code of 1954, 26 U.S.C.A.):

"§ 4461. Imposition of tax

"There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

"(1) $10 a year, in the case of a device defined in paragraph (1) of section 4462(a);

"(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a); and

"(3) $10 or $250 a year, as the case may be, for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device.

"§ 4462. Definition of coin-operated amusement or gaming device

"(a) In general.—As used in sections 4461 to 4463, inclusive, the term 'coin-operated amusement or gaming device' means—

"(1) any amusement or music machine operated by means of the insertion of a coin, token, or similar object, and

"(2) so-called 'slot' machines which operate by means of insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens.

\* \* \* \* \*

"§ 4463. Administrative provisions

"(a) Trade or business.—An operator of a place or premises who maintains for use or permits the use of any coin-operated device shall be considered, for purposes of chapter 40, to be engaged in a trade or business in respect of each such device.

\* \* \* \* \*

"§ 4901. Payment of tax

"(a) Condition precedent to carrying on certain business.—No person shall be engaged in or carry on any trade or business subject to the tax imposed by section 4411 (wagering), 4461(2) (coin-operated gaming devices), 4721 (narcotic drugs), or 4751 (marihuana) until he has paid the special tax therefor.

"(b) Computation.—All special taxes shall be imposed as of on the first day of July in each year, or on commencing any trade or business on which such tax is imposed. In the former case the tax shall be reckoned for 1 year, and in the latter case it shall be reckoned proportionately, from the first day of the month in which the liability to a special tax commenced, to and including the 30th day of June following.

"(c) How paid.—

"(1) Stamp.—All special taxes imposed by law shall be paid by stamps denoting the tax.

\* \* \* \* \*

"§ 7203. Willful failure to file return, supply information, or pay tax

"Any person required under this title to pay any estimated tax or tax \* \* \* who willfully fails to pay such estimated tax or tax, \* \* \* at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

The gist of the issue in the instant cases is whether the "coin-operated gam-

ing device" in question is an amusement device within the definition thereof in Section 4462(a) (1), or a gaming device as defined in Section 4462(a) (2).

Considering a like motion made by defendants in eleven cases this Court, on February 29, 1956, refused to grant a dismissal, and in an accompanying memorandum, said:

> "It is sound law that interpretation of statutes levying taxes should not permit implication to prevail above and beyond the clear import of the language used. Doubts in that respect are to be construed most strongly in favor of the defendants.[1] * * * I am not convinced at this posture of the case that the indictments go beyond the clear import of the language used in the applicable statutes."

On that occasion the Act quoted hereinbefore had not been interpreted by any binding appellate decision. Hence the Court's "Judicial abstention"[2] from a holding that might be considered an unwarranted extension of the Act. The United States Court of Appeals for the Eighth Circuit has not passed on the problem presented by the instant case. On September 28, 1956, the Seventh Circuit Court of Appeals rendered a decision in point.[3]

 Stare decisis in the District of Minnesota must give way to a well-considered decision of a neighboring Court of Appeals that has reached an opposite holding in a similar case.[4] As so clearly pointed out by the Eighth Circuit Court of Appeals, "it is elementary" that not only must a strict construction be applied to a criminal statute, but it must also receive "a uniform construction." It is the manifest duty of a federal trial court to follow the decisions of such federal courts in other Circuits (if not clearly erroneous) who have met with and decided the point in question.[5]

The government, critical of the decision in the Korpan case, supra, contends that:

> "The basic error committed in the Court's decision is that it attempts to construe by resort to legislative history 'clear' words in a statute. Then after importing the so-called legislative history it fails to properly understand it or apply it."

This reasoning is neither impressive nor persuasive.

The government has not convinced me that the Korpan decision is demonstrably wrong. In that case the Court, with customary clarity, discussing similar questions to those here in issue, emphasizes that logic and law oppose the viewpoint of the government in the instant case, in these words:

> "Section 4462(a) (2) lays down three requirements in defining a coin-operated gaming device: (1) it must be operated by means of the insertion of a coin or similar object; (2) the application of the element of chance must be involved by virtue of which, (3) the machine may deliver or entitle the person playing or operating the machine to receive cash, premiums, merchandise or tokens.
>
> "It is the Government's contention that if a particular machine incorporates these three incidents it meets the definition of a coin-operated gaming device and consequently is subject to the gaming tax rate of $250.00 for each such machine. The difficulty with this argument is that it overlooks the introductory language of paragraph (a) (2), i. e., 'so-called "slot" machine'.

1. Gould v. Gould, 245 U.S. 151, 153 [38 S.Ct. 53, 62 L.Ed. 211].

2. United States v. Five Gambling Devices, 346 U.S. 441, 449, 74 S.Ct. 190, 98 L.Ed. 179.

3. United States v. Korpan, 7 Cir., 237 F. 2d 676.

4. McDonald v. United States, 8 Cir., 89 F.2d 128, 134.

5. Martyn v. United States, 8 Cir., 176 F.2d 609, 610.

"If the dictionary definition of 'slot machine' were applied, it is clear that these machines would be covered by the definition of coin-operated gaming device. 'A machine the operation of which is started by dropping a coin in a slot.' Webster's New International Unabridged Dictionary, 2d Ed. 1955.

"When this definition is considered with the choice of language employed by Congress, i. e., 'so-called "slot" machines which operate by means of the insertion of a coin, token, or similar object * * *,' it would appear that Congress intended a more restrictive meaning for the term 'slot machine.' Otherwise, there appears no purpose for the use of the language 'so-called "slot" machine'.

"The term 'so-called' is a modifying word implying doubt as to the correctness or propriety of so designating a thing. See Webster's New International Unabridged Dictionary, 2d Ed. 1955. And the use of quotation marks to set off the word 'slot' indicates that Congress did not intend the language 'so-called "slot" machine' to be as comprehensive as the dictionary definition of 'slot machine.' Every word used in a statute is presumed to have a meaning and purpose, and, if possible, every word must be accorded significance and effect. Washington Market Co. v. Hoffman, 101 U.S. 112, 25 L.Ed. 782; Adler v. Northern Hotel Co., 7 Cir., 175 F.2d 619. We conclude, therefore, that not only must these machines incorporate the three incidents noted above, but they must also be 'so-called "slot" machines'.

"Since the term 'so-called "slot" machine' is not adequately defined in Section 4462 nor elsewhere in the Internal Revenue Code, it becomes necessary to resort to extrinsic evidence in order to accord meaning and purpose to this language.

\* \* \* \* \*

"Although the legislative history of Section 4462 does not clearly demonstrate the meaning and purpose which Congress intended to attribute to the language, 'so-called "slot" machine', it does indicate that Congress intended to exclude pinball machines from the category of gaming devices. * * *" 237 F.2d 676.

■ To extend the term "slot machine" to the devices described in the indictments would be a perversion of the language used by Congress. When a rule of conduct is laid down in words that evoke in the average mind the definition set forth in Section 4462(a) (2), supra, it requires a straining of the imagination beyond a reasonable point to include therein the pinball machines here involved.[6]

The language adopted by Congress in said Section 4462(a) (2) as interpreted by the Court of Appeals for the Seventh Circuit, points out an intent to expressly exclude the machines here in question from the definition of gaming devices, as set forth therein.

For the reasons above set forth, defendants' motions to dismiss must be granted.

It is so ordered.

An exception is allowed to plaintiff in each case.

---

6. McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816.