284 F.2d 616
 61-1 USTC P 15,327
 J. W. SINGLETON, Appellant,
v.
Curtis R. MATHIS, Director of Internal Revenue for the State
of Arkansas, Appellee.
Charles A. STEWART, Appellant,
v.
Curtis R. MATHIS, Director of Internal Revenue for the State
of Arkansas, Appellee.
 Nos. 16561, 16562.
 United States Court of Appeals Eighth Circuit.
 Dec. 27, 1960.
 
 Leonard L. Scott, Little Rock, Ark., made argument for appellants. Glenn F. Walther and Eichenbaum, Scott & Miller, Little Rock, Ark., were with him on the brief.
 Louise Foster, Atty., Dept. of Justice, Washington, D.C., made argument for appellee. Chas. K. Rice, Lee A. Jackson and A. F. Prescott, Dept. of Justice, Washington, D.C., were with her on the brief.
 Before WOODROUGH, VAN OOSTERHOUT, and MATTHES, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 These actions, separately brought, have the common objective of enjoining appellee, Director of Internal Revenue for the State of Arkansas, from assessing and collecting a $250 gaming tax on each of two pinball machines owned by appellant Stewart and rented by him to appellant Singletion.[1] The Director filed a motion to dismiss the complaint in each case, and upon due consideration the court granted the motions and dismissed the complaints for lack of jurisdiction. These appeals followed.
 
 
 2
 In summary, the complaints alleged that the 'Nite Club' pinball machine, while having the characteristics of a gaming device as set out by Rev.Ruling 59-294, 1959-2 Cum.Bull. 340,[2] is to be used solely for amusement; that the 'Lotta Fun' pinball machine does not possess any device for releasing free games or plays-- that it is an amusement device which will not be used for gambling, and that each machine is subject only to the $10 tax; that Rev.Ruling 59-294 is illegal and void; that the action of the Director in attempting to collect the $250 tax on each machine is arbitrary and capricious; that if the machines are seized, plaintiffs will be deprived of revenue; that the action of the Director has caused and will continue to cause injury and economic loss to plaintiffs.
 
 
 3
 We have for determination the narrow question of whether these actions may be maintained, notwithstanding 7421 of the 1954 Code, which expressly prohibits the maintenance of an action, with statutory exceptions not here pertinent, for the purpose of restraining the assessment or collection of any tax. Mich litigation has been focused on this provision of the Internal Revenue Code. In what probably is regarded as the landmark case of Miller v. Standard Nut Margarine Co., 284 U.S. 498, at page 509, 52 S.Ct. 260, at page 263, 76 L.Ed. 422, the Supreme Court made this timely observation:
 
 
 4
 'Independently of, and in cases arising prior to, the enactment of the provision (Act of March 2, 1867, 14 Stat. 475) which became Rev.St. 3224 (26 U.S.C.A. 154), this court in harmony with the rule generally followed in courts of equity held that a suit will not lie to restrain the collection of a tax upon the sole ground of its illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector.'
 
 
 5
 It would appear that in the many cases in which taxpayers have endeavored to restrain collection of a tax, the courts have consistently adhered to the rule laid down in the Miller case, that is, that not only must the element of illegality be present, but, additionally, there must exist special and extraordinary circumstances of sufficient importance to warrant court interference. See and cf. Kaus v. Huston, 8 Cir., 1941, 120 F.2d 183; Smith v. Flinn, 8 Cir., 1958, 261 F.2d 781, at page 785, where we cite seven cases in which it was found that unusual circumstances existed (opinion modified on petition for rehearing 264 F.2d 523); Missouri Valley Intercol. Ath. Ass'n v. Bookwalter, 8 Cir., 1960, 276 F.2d 365.[3]
 
 
 6
 When viewed in light of the foregoing rule, the allegations in the instant complaints are wholly insufficient to bring these cases within some 'acknowledged head of equity jurisprudence.' As in Missouri Valley Intercol. Ath. Ass'n v. Bookwalter, supra, and Kaus v. Huston, supra, plaintiffs do not attack the legality of the tax as such; their complaint is that they are not liable for it. And see, Martin v. Andrews, 9 Cir., 238 F.2d 552, at page 557, 65 A.L.R.2d 543:
 
 
 7
 'The mere illegality of the exaction is insufficient to justify a holding that the statute prohibiting such actions is inapplicable. This is true even though the asserted illegality is predicated upon a claim of unconstitutionality. (Citing Dodge v. Osborn, 240 U.S. 118 (36 S.Ct. 275, 60 L.Ed. 557); Dodge v. Brady, 240 U.S. 122 (36 S.Ct. 277, 60 L.Ed. 560); Bailey v. George, 259 U.S. 16 (42 S.Ct. 419, 66 L.Ed. 816)).'
 
 
 8
 Furthermore, as to the machine described in the complaints as 'Nite Club' it appears that it has all the characteristics of the type of machine which falls within the ruling defining a 'gaming device,' and thus the question of Singleton's liability is certainly an issue.
 
 
 9
 However, irrespective of the question of Singleton's liability for the tax, we find that the allegations in the complaints wholly fail to satisfy the requirement of special or extraordinary circumstances. The naked averments that appellants will be deprived of revenue if the machines are seized and their business will be injured, and economic loss will result if the $250 tax is collected, are of insufficient qualitative force to merit serious consideration. See Kaus v. Huston, supra, 120 F.2d at page 185, where stronger circumstances were held insufficient. And the additional arguments, apparently presented to the trial court, though not pleaded, that payment of the tax would subject appellant Singleton to undesirable newspaper publicity, and 'might jeopardize his beer license,' are as stated by the trial court, 'speculative and purely collateral,' and which, in any event, are not of sufficient weight to justify the granting of equitable relief. Singleton's rights may adequately be protected through a suit for refund-- or, obviously, he has the choice of simply not exhibiting the machines and thereby he may escape any liability for the tax.
 
 
 10
 On behalf of appellant Stewart, owner of the machines, the contention is made that he, though a non-taxpayer, has standing to contest the validity of the tax. Through judicial holdings, the principle has emerged that a non-taxpayer may obtain an injunction restraining the Government from levying on his property for the purpose of satisfying another's liability. See Tomlinson v. Smith, 7 Cir., 128 F.2d 808; Adler v. Nicholas, 10 Cir., 166 F.2d 674; Bigley v. Jones, D.C.W.D.Okl., 64 F.Supp. 389, 391. However, the facts, appearing in the complaint here do not bring Stewart within this rule. The Director is making no attempt to collect the tax from Stewart, and his remote interest in the matter will become a reality only if Singleton fails to pay the tax legally due. The trial court was correct in observing that Stewart is endeavoring to obtain an advance determination of the validity of the tax proposed to be assessed against Singleton. In our view, Stewart is actually seeking a declaration of the rights and legal relations of the parties, which the court was without authority to adjudicate. Title 28, U.S.C.A. 2201 (the Declaratory Judgment Act), specifically excepts controversies over federal taxes from the scope of the Act. See Tomlinson v. Smith, supra, 128 F.2d at page 811; Martin v. Andrews, supra, citing cases at page 554 of 238 F.2d.
 
 
 11
 Clearly, the court was without jurisdiction to grant the relief sought, and the order dismissing the complaints is
 
 
 12
 Affirmed.
 
 
 
 [1]
 The Director was proceeding under 4461, 4462 and 4463 of the Internal Revenue Code of 1954, 26 U.S.C.A. 4461, 4462, 4463. Section 4461 authorizes imposition of a special tax of $10 on any amusement or music machine as defined in 4462(a)(1) and $250 a year on 'slot' machines as defined in 4462(a)(2)
 
 
 [2]
 In United States v. Korpan, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337, the Supreme Court ruled that a coin-operated machine of the 'pin-ball' type, the operation of which involves the element of chance, as the result of which the player may become entitled to money, is a 'so-called 'slot' machine' within the meaning of 4462(a)(2) of the 1954 Revenue Code, and is therefore subject to the tax of $250 per annum. Following Korpan, Rev.Ruling 59-294, 1959-2 Cum.bull. 340 was issued, which in pertinent part provides that '* * * a 'pin-ball' machine with respect to which unused 'free plays' are redeemed in cash, tokens, or merchandise, or with respect to which prizes are offered to any person for the attainment of designated scores is regarded as a gaming device for purposes of the occupational tax on coin-operated devices. * * *
 '* * * Accordingly, where a pinball machine is equipped with a push button or other device for releasing free plays and a meter for registering the plays so released, or with a provision for multiple coin insertion for increasing the odds, such equipment is considered prima facie evidence that the machine is being maintained for gambling purposes. Therefore, in such cases, it is not necessary that evidence of payoffs or redemption of free plays be obtained in order to hold the $250 special gaming device tax applicable. Thus, a pinball machine of the type described in the instant case is considered to be a gaming device per se within the meaning of section 4462 of the Code.'
 
 
 [3]
 In their brief, appellants state: 'Two Circuits have gone so far as to indicate that illegality alone, if severe enough, is sufficient.' Cited are National Foundry Co. of N.Y. v. Director of Int. Rev., 2 Cir., 229 F.2d 149, 151; Holland v. Nix, 5 Cir., 214 F.2d 317. While the court does use the conjunction 'or' in National Foundry, thereby indicating illegality or extraordinary circumstance is sufficient, when viewed in context it is obvious that the court recognized the necessity of both elements being present. In Holland, the court also indicates illegality alone is sufficient, but it cites as authority for granting an injunction the Miller v. Standard Nut Margarine case, supra, and Shelton v. Gill, 4 Cir., 202 F.2d 503, which expressly holds that both elements must exist