**BOB JONES UNIVERSITY, Appellee.**

**v.**

**John B. CONNALLY, Secretary of the Treasury of the United States and Johnnie M. Walters, Commissioner of Internal Revenue, Appellants.**

**No. 72–1075.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1972.

Decided Jan. 19, 1973.

Rehearing Denied March 21, 1973.

Leonard J. Henzke, Jr., Atty., Dept. of Justice (John K. Grisso, U. S. Atty., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Grant W. Wiprud, Attys., Dept. of Justice, Tax Div., on brief), for appellants.

J. D. Todd, Jr., Greenville, S. C. (Wesley M. Walker, James H. Watson, O. Jack Taylor, Jr., and Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief) for appellee.

Before BOREMAN, WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Bob Jones University (Jones University), a non-profit educational institution which concededly practices racial discrimination in the admission of students, sought a preliminary and permanent injunction to prevent Treasury officials from terminating its tax-exempt status. Treasury officials had begun administrative proceedings to that end in accordance with an announced policy of withdrawing tax-exemption and deductibility-assurance rulings of schools having racially discriminatory policies, when suit was filed. The district court, 341 F.Supp. 277, denied the Treasury officials' motion to dismiss for lack of jurisdiction and granted an injunction *pendente lite*. Because we conclude that the district court lacked jurisdiction under § 7421 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7421 to grant the requested relief, we reverse and remand the case for dismissal of the complaint.

### I.

Jones University is a fundamentalist religious organization which subscribes to the belief that God intended the various races of men to live separate and apart, and that intermarriage of differ-

ent races is contrary to God's will and the teaching of the Scriptures. In furtherance of these beliefs, Jones University prohibits the admission of black students, it prohibits students it does admit from dating or marrying members of another race, whether students or not, and it accepts some Oriental students but only on condition that they will not date outside of their own race. Jones University has enjoyed tax-exempt status since at least April 30, 1942, under § 501(c)(3) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 501(c)(3) and the predecessor code.

On July 10 and July 19, 1970, the Internal Revenue Service (IRS) announced publicly that it could no longer legally justify allowing tax-exempt status to private schools which have racially discriminatory admission policies, nor could it treat gifts to such schools as tax-deductible charitable contributions. It also stated that, although the non-discrimination requirement would not affect a school's ordinary admissions policies which had no relation to race, the requirement would prohibit allowance of the tax benefits to church-related schools which discriminated on the basis of race. On November 30, 1970, IRS wrote a letter of inquiry to each school in the United States, including Jones University, announcing its new policy and requesting each school to furnish specific information regarding its admissions policy within thirty days. Jones University responded that it did not admit blacks.

There followed various communications and meetings between IRS and representatives of Jones University, each refusing to deviate from its original position. The suit was filed on September 9, 1971, and no further administrative steps were taken. Had suit not been filed there would have been further conferences at the level of the District Director and the National Office in Washington. Only if Jones University declined to abandon its racially discriminatory policies and IRS declined to alter its announced policy would Jones Uni-

versity's tax-exempt status be revoked, its records audited and a notice of proposed tax deficiencies issued. Even then, Jones University would have additional opportunities to seek administrative relief. See 9 Mertens Law of Federal Income Taxation (Rev.), §§ 49.110, 49.112, 49.114, 49.115, 49.118–49.124. If administrative relief was not forthcoming, IRS would issue a notice of deficiency, the legality and correctness of which could be litigated in the Tax Court, 26 U.S.C.A. § 6213, or, alternatively, Jones University could pay the tax and sue for a refund on the ground of illegality, 28 U.S.C.A. § 1346; 26 U.S.C.A. § 7422.

II.

The controlling statute reads:

§ 7421. Prohibition of suits to restrain assessment or collection

(a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The exceptions in the statute are inapplicable: §§ 6212(a) and (c) and 6213(a) permit suits in the Tax Court to litigate the legality and correctness of deficiency assessments and § 7426(a) and (b)(1) relates to foreclosure proceedings and judicial sales with regard to property on which the United States has a tax lien and permits the United States to be joined and participate in cases of this nature.

Jones University contends, and the district court concluded, that the statute is inapplicable because no formal assessment of deficiencies had been made and thus the suit did not seek to enjoin an "assessment or collection" of any tax. We disagree. First, the administrative proceedings which had as their object the withdrawal of tax-ex-

emption and deductibility-assurance rulings are directly involved with the assessment and collection of taxes from Jones University and those making contributions thereto. If those rulings are withdrawn, Jones University will be liable for taxes on any net income which it realizes and contributors to Jones University may not deduct from their gross income the amounts of their contributions. Either event would result in an increase in taxes.

A number of cases hold, or make clear, that a suit to enjoin the withdrawal of tax-exemption rulings, the withdrawal of which would ultimately result in potentially greater tax revenues, constitutes a suit to enjoin the "assessment" of a tax within the meaning of § 7421, and we are persuaded to follow them. J. C. Penney Co. v. United States Treasury Dept., 439 F.2d 63 (1971), aff'g 319 F.Supp. 1023 (S.D.N.Y.1970), cert. den. 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); Koin v. Coyle, 402 F.2d 468 (7 Cir. 1968); Kennedy v. Coyle, 352 F.2d 867 (7 Cir. 1965); Zamaroni v. Philpott, 346 F.2d 365 (7 Cir. 1965); Crenshaw County Private School Foundation v. Connally, 343 F.Supp. 495 (M.D.Ala.1972) (on motion to dismiss); Horton v. Humphrey, 146 F.Supp. 819, 821 (D.D.C.), aff'd 352 U.S. 921, 77 S. Ct. 224, 1 L.Ed.2d 157 (1956) (per curiam). The common sense of the matter is that where, as we have shown, the necessary result of granting the relief prayed would be to prevent the assessment of any tax, § 7421 is applicable.

■ The circumstances under which § 7421 is not to be applied, when it would otherwise appear to be applicable, are spelled out in Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The test to permit a taxpayer successfully to enjoin the assessment or collection of a tax is twofold: first, he must show irreparable injury to himself if collection were effected, and second, he must show that "under no circumstances could the Government ultimately prevail" in its assertion of tax liability. 370 U.S. at 7, 82 S.Ct.

at 1129. Otherwise, his remedy is to litigate the validity or amount of the tax by the statutory routes, i. e., appeal of assessment, or payment of the tax and suit for refund.

We have no doubt that Jones University will suffer irreparable injury if withdrawal of its tax-exempt status is effected even if it should ultimately prevail in its argument that its tax-exempt status may not legally be disturbed. Of course, the tax on any net income which may be imposed would be recoverable, but we would be naive indeed not to recognize the substantial portion that contributions play in the gross income of any institution of higher learning and the adverse effect on those contributions if their deductibility for income and estate tax purposes of the donors is disallowed. If Jones University is required to litigate its tax-exempt status after that status has been withdrawn, we can predict with confidence that during the period of litigation it will lose gifts and contributions which will never be recoverable even if it is successful in having its tax-exempt status restored. Thus, the first test of *Williams Packing*, irreparable injury, is met, and we consider the second.

We cannot conclude that "under no circumstances" could IRS be successful in withdrawing Jones University's favorable tax rulings. Although we decline the invitation of counsel for Jones University, extended in oral argument, to decide this case finally on the question of whether Jones University is entitled to tax-exempt status, and consequently we are not to be understood as expressing any view on the ultimate merits of the dispute between IRS and the taxpayer, the recent decision in Green v. Connally, 330 F.Supp. 1150 (D. D.C.1971), aff'd per curiam sub nom. Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971) makes apparent our conclusion. *Green* was a class action by Negro parents of school children attending public schools in Mississippi to enjoin U. S. Treasury officials from according tax-exempt status and deducti-

bility of contributions to private schools in that state which discriminated against Negro students. The relief prayed was granted and on appeal the Supreme Court affirmed per curiam.

The essence of the decision of the D. C. district court may be distilled as follows: Section 501(c)(3) of the Internal Revenue Code, in granting tax-exempt status to "religious" and "educational" institutions requires that they also satisfy the common law concept of "charitable." At common law a charitable trust cannot be created for a purpose which is illegal or whose accomplishment would tend to frustrate some well-settled public policy. Hence there is presently serious doubt, in view of shifting racial attitudes as reflected in legislation and court decisions, that a charitable trust can legally be established, or an existing trust enforced, which establishes racially discriminatory educational institutions. Federal tax exemptions and deductions are generally not available for activities contrary to declared federal public policy. In the light of the Fourteenth Amendment, the decisions of the Supreme Court on the subject of school desegregation and the Civil Rights Act of 1964, the exemptions and deductions provided for charitable educational institutions are not available for private schools discriminating on grounds of race.

Because of the breadth of these holdings and their acceptance by the Supreme Court, we cannot conclude that IRS's contemplated withdrawal of tax-exemption and deductibility-assurance rulings is frivolous or that IRS "under no circumstances" may ultimately prevail. It follows that the second requirement of *Williams Packing* has not been met and § 7421 is a complete bar to maintaining the action.

■ A final comment is necessary. While the district court found, and the dissenting member of the panel stresses, that the "primary purpose" of the Treasury officials in threatening to revoke Jones University's favorable tax status was not to assess and collect taxes but to exact compliance with certain political or social guidelines, i. e., discontinuance of racial discrimination, we think that the finding is irrelevant to the proper disposition of this case. Substantially the same argument was made and rejected in Bailey v. George, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922). There the Court prohibited enjoining a collector of internal revenue from collecting the Child Labor Tax despite the argument that the tax was not for the purpose of raising revenue, but for the purpose of regulating child labor. In the *Bailey* case there was even more reason to accept the argument than in the case at bar because on the same day that Mr. Chief Justice Taft wrote that an injunction against the collection of the tax would be improper, the Court ruled, again in an opinion by Mr. Chief Justice Taft, that the Child Labor Tax was unconstitutional. Child Labor Tax Case, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817 (1922). Hence, we deem rejection of the argument in *Bailey* as conclusive here.

Similarly, in Singleton v. Mathis, 284 F.2d 616 (8 Cir. 1960), the Court affirmed the denial of an injunction against the director of internal revenue who was proceeding to collect a gaming tax of $250 on each of two pinball machines. It appears to be obvious that the purpose of the tax was not to raise revenue, but was to control gambling because a $10 tax was the amount assessed against amusement devices by the same statute.

Accordingly, we reverse the judgment of the district court and remand the case for dismissal of the complaint.

Reversed and remanded.

BOREMAN, Senior Circuit Judge (dissenting):

For the reasons cogently stated by the district court in Bob Jones University v. Connally, 341 F.Supp. 277 (D.S.C.1971), I respectfully dissent. I would add the following comments and observations.

Under § 7421 of the Internal Revenue Code, as interpreted in Enochs v. Wil-

liams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the burden upon one seeking to enjoin the collection of a tax is huge, indeed. A showing of irreparable harm, "such as the ruination of the taxpayer's enterprise," says the Court, 370 U.S. at 6, 82 S.Ct. at 1129, is *not* enough. It must be shown that "under no circumstances could the Government ultimately prevail." 370 U.S. at 7, 82 S.Ct. at 1129. It would appear obvious that, as a practical matter, such a standard could possibly be met only in the most exceptional and unusual circumstances.[1]

The reason for this exceptional administrative power has been found in the "manifest purpose" of § 7421, *i. e.*, that the United States must be "assured of prompt collection of its lawful revenue." *Williams Packing Co., supra*, 370 U.S. at 7, 82 S.Ct. at 1129. However, the United States is not primarily concerned here with the collection of revenue. The district court expressly found that the "primary purpose" of the Treasury officials in threatening to revoke the University's tax exempt status and tax deductible benefits to donors is *not* to assess and collect taxes, but through the use of taxing powers "to require private educational and religious institutions to comply with certain political or social guidelines." 341 F.Supp. at 284.

The University contends, *inter alia,* that the threatened actions of the Treasury officials would violate the First Amendment in that such actions would (1) deprive the University of the free exercise of its religious beliefs and, (2) promote, benefit and establish other religions. It certainly is not to be assumed that the Commissioner is possessed of "administrative expertise" with respect to the question presented, or that his legal opinion is in any way entitled to exceptional weight. Indeed, it would ap-

pear to me that the threatened acts of the defendants may well be subject to serious challenge as arbitrary and capricious and beyond the scope of their statutory power and authority.[2]

The majority decision would permit the Government to irreparably damage the University by actions taken upon a legal determination by the Commissioner not directly related to any "tax law," for a purpose not directly related to the collection of any tax, upon the merest chance that the Commissioner might be right. On the facts of this case, I can find no reason, purpose or justification for permitting the Government, absent proper judicial scrutiny going substantially beyond the "under no circumstances" test of *Williams Packing Co.*, to so proceed against the University. Surely such was not the intent of Congress in enacting § 7421, nor the meaning of the Supreme Court in *Williams Packing Co.*

Under the blanket protection of unfettered authority over the assessment and collection of taxes claimed and assumed by the Treasury officials, they are undertaking to interfere with and destroy the constitutionally mandated free and meaningful exercise and practice of the long established, widely publicized and unchallenged religious beliefs of Bob Jones University. To permit such threatened action in these circumstances without affording the University a right to judicial consideration would tend to demonstrate that the age old phrase—*"The power to tax is the power to destroy"*—is literally true.

No case is cited by the Government which applies the strict *Williams Packing Co.* test in circumstances similar to those in the instant case. I reach the conclusion that the application of that test here may well present a question as to the constitutionality of § 7421.

1. For instance, it is unlikely that this court would assume to state positively, in advance, what the Supreme Court would hold under *any* given set of circumstances. To do so would be presumptuous, indeed.

2. The district court found that the University "has made a prima facie showing that the defendants have surpassed, or are in the process of exceeding, their statutory authority as granted to them by the Congress in the Internal Revenue Laws." 341 F.Supp. at 285.