## UNITED STATES v. 24 DIGGER MERCHANDISING MACHINES, etc., et al.

### No. 14618.

United States Court of Appeals
Eighth Circuit.

Jan. 6, 1953.

Rehearing Denied April 14, 1953.

Charles A. Beasley, Jr., Asst. U. S. Atty., Ft. Smith, Ark. (R. S. Wilson, U. S. Atty., Ft. Smith, Ark., on the brief), for appellant.

H. A. Tucker, Hot Springs, Ark., for intervener-appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a judgment which dismissed a libel of information against the 24 machines and sundry articles seized therewith which are named in the title of the action. The machines were transported from a point outside to a point inside the State of Arkansas and were alleged to be gambling devices within the meaning of Section 1171, Title 15, U.S.C.A. that had been transported in interstate commerce in violation of Section 1172, Title 15, U.S.C.A., and were therefore subject to seizure under the provisions of Section 1177, Title 15, U.S.C.A.

The owner intervened in the action, denied that the machines constituted gambling devices within the meaning of the statute and prayed for their return.

A trial was held to the court, sitting without a jury, and as one of its conclusions of law, the court declared: "The machines or devices were not gambling devices as defined in 15 U.S.C.A. Section 1171, and, therefore, the libel should be dismissed and the property restored to the Intervener." Judgment of dismissal was entered accordingly, and the United States has appealed.

On the trial the parties agreed that, as stated by the court, " * * * the only question involved here is whether, or not the machine actually constitutes a gambling device under the statute". The provisions of Title 15, U.S.C.A. § 1171, are:

"As used in this chapter—(a) The term 'gambling device' means—* * * (2) any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; * * *."

The intervener's defenses to the action were two: (1) That the machines were not "devices designed and manufactured to operate by means of insertion of a coin, token, or similar object"; and (2) that the machines were not so designed and manufactured that they would, when operated, deliver any money or property "as the result of the application of an element of chance", but that any money or property delivered was delivered as a result of the skill of the operator or player of the machines.

On the trial, the owner of the machines was the only witness. In the presence of the court this witness dismantled one of the Digger Machines and pointed out to the court all of its working parts and its working principle, and he operated the machine.

It appeared that the machines or devices in question, as originally designed and manufactured, contained a slot for the insertion of a coin. Insertion of a coin engaged the mechanism of the device, or "put it in gear", and further operation of the machine was in the hands of the player. At the time of the trial, however, and at all times material to the issues herein, the machines had been so altered that they no longer needed insertion of a coin to commence operation of the machine. The coin-insertion apparatus had been removed, and the mechanism of the machines was engaged by an attendant of the machines who would manually throw the machine into gear by pulling a string, after a prospective player of the machine had given the attendant the sum of 10 cents.

Once the mechanism of the machine was engaged, the operator of the machine controlled further movement of the apparatus by means of a small crank located on the front of the machine. The over-all appearance of the machine is that of a rectangular box, approximately two and one-half or three feet in length, width and height. There is glass around the upper two-thirds of three sides of the machine, affording a clear view of the contents of the machine. Within the box-like structure is a miniature crane, mounted so as to be free to revolve on a swivel. The crane includes a boom several inches in length, and on the boom, suspended by a chain, is a "claw" or "bucket" assembly which may be raised and lowered and which will close and open. This claw or bucket assembly, and indeed the whole crane, is fashioned much like, and evidently modeled after, the large machines that are used in excavating work. On the floor of the machine, just below the level of the crane, are scattered various small items of prizes, such as ladies' compacts, miniature cowboy boot decorations, cheap pen and pencil sets, inexpensive cigarette lighters, pocket watches, and similar objects. These items are the prizes sought to be gained by the play of the machine. Some of them are almost worthless, while some prizes do have a value—e. g. there was testimony that pocket watches had a value of $2.10, while a pistol cigarette lighter was valued at 60 cents.

After the player of the machine has paid his money to the attendant, and the attendant has tripped the lever so as to engage

the mechanism for operation, the play begins. Initially the crane is so turned that the boom and the bucket or claw is over a hole or chute in the floor of the machine to the player's left. The bucket or claw is suspended in an open condition. As the player turns the crank, the claw or bucket is raised out of the chute and the crane and boom swing on the swivel arrangement to the player's right to a pre-determined stopping place. Further turning of the crank causes the bucket to descend to the floor of the machine and there to close—possibly over some prize on the floor and possibly over nothing. Still further turning of the crank (all turning of the crank is in the same clockwise direction) causes the bucket, and its contents if any, to be raised and the crane and boom assembly swings to the player's left until the bucket is over the chute in the floor of the machine. There further turning causes the bucket to descend and open, and any prize seized and held by the claw or bucket is dropped into the chute and delivered to the player. The machine is then ready for another operation upon the tripping of the device engaging the mechanism in gear.

The point at which the boom will stop in its movement to the right is governed by a mechanism inside of the machine. There are five or six stopping points and the boom stops at each of them in succession or rotation. When a cycle is completed the same cycle starts again. Other than this stopping point, everything the machine does is controlled by the crank. Fast turning causes the boom to turn rapidly, slow turning of the crank causes corresponding slow turning of the boom. When the bucket or claw is on the floor of the machine, the speed with which the bucket will close is dependent on the speed with which the crank is turned.

In operating the machine in court, the witness demonstrated how fast turning of the boom would cause the bucket to swing at the end of the chain. When the bucket is so swinging, after having reached the pre-determined stopping place, if it is let down at the right instant it may be landed at some distance one way or the other from a point directly beneath the boom where it would land if it were not swinging.

The witness demonstated how he could sometimes land the bucket over an object not directly under the boom by turning the crank rapidly and thus causing the bucket to swing on its chain. The witness testified that by turning the crank slowly after the claw or bucket came to rest on the floor, the bucket could be caused to close slowly and that the bucket, in so closing slowly, might catch or pick up some prize that it would not have otherwise picked up.

Consideration of these factors led the trial court to state, as a conclusion of law, that "any money or property that might be delivered by reason of the operation of the machine or device would result from the application of skill on the part of the operator or customer."

## (1)

We turn first to the question whether the machines with which we are here concerned are "designed and manufactured to operate by means of the insertion of a coin, token, or similar object". It is admitted that at all times material herein the machines did not operate by means of the insertion of a coin, because, as stated above, the coin-insertion apparatus had been removed. However, it is immaterial whether the machines actually operate by insertion of a coin at the time they are accused because the statute makes the test how the machines were "designed and manufactured". Subsequent alterations of the machine would not affect the manner in which they were designed and manufactured. The trial court found:

"As originally manufactured, the devices contained a slot for the insertion of a coin, and were originally designed and manufactured to be used by the insertion of a coin, token, or similar object, but the insertion of the coin, token, or similar object did not automatically set the machine or device in operation. It merely engaged the mechanism and the operation of the device was left entirely to manipulation by the operator or customer."

650

However, the conclusion does not follow from that finding that the machines are not within the definition as set out in Title 15, U.S.C.A. § 1171. It is our view that when a machine or device is so designed as to be put in gear, or readied for operation, by means of insertion of a coin, token, or similar object, that such machine is "designed and manufactured to operate by means of insertion of a coin, token, or similar object" within the meaning of the statute, and we hold that machines of the type of those in the case at bar do fall within the statute as far as the coin-operating feature is concerned.

(2)

The remaining question is whether the machines herein are of a type "designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property". The trial court declared as a conclusion of law that property delivered as the result of the operation of these machines "would result from the application of skill on the part of the operator or customer".

With that conclusion we cannot wholly agree. Admittedly, there is some control on the part of the operator in his manipulating of the crank on the front of the machine. However, it appears to us that there are many elements of chance involved. We think a statement of the United States District Court for the Eastern District of Missouri in the case of United States of America v. 10, more or less, Digger Machines, 109 F.Supp. 825, 826, is appropriate. In that case the court, in discussing machines somewhat more automatic than the machines herein involved, stated:

"This device impresses this Court as a machine, subject to and cunningly equipped, providing just enough control in the customer to entice those who attend carnivals and street fairs to try to get something for comparatively nothing, under the illusion that it is a game of skill and not one of chance. They are on display for the enticement, not of experts with years of experience, but for the usual carnival frequenter. They are in fact and for all practical purposes, i. e., profit to owner and loss to operator or public, a game of chance."

A player may step up to operate the machines herein involved and desire to attempt to pick up a certain pen or pencil. He begins his play and it is purely a matter of chance, to the particular player on his first play, whether the boom will stop over the particular item. Admittedly, if he continues to play, the boom will come to rest at the location he desires, but it cannot be denied that on the first opportunity it is purely chance, to the individual player, where the boom will stop.

If another player begins his play and has no particular object in mind that he desires to pick up he is willing to chance a grab at any item within reach of the stopping place of the boom.

And, of course, even after the boom stops where the player desires, the element of chance is still very greatly in evidence. Whether a particular item can be seized by the claw or bucket must necessarily depend on the manner in which the bucket is positioned with relation to the prize. The bucket may rotate slightly at the end of the chain while swinging and thus might easily be in the wrong position to seize and hold a particular prize. To say the player can, by timing the swings of the bucket, exactly control its position on the end of the chain is to ignore the facts.

It appears that the trial court gave some consideration to the question whether chance or skill predominated in the operation of the machine. In discussion with counsel after the submission of the evidence, the court stated: "* * * the predominating feature of the machine is skill rather than chance. I imagine there is some chance to it of course. Chance or luck. * * * I don't believe they come under the provisions of the statute sufficiently."

It is our view that in construing the statute, comparison of the elements of chance and skill is immaterial. The statute refers to a machine so designed that it will deliver property "as the result of the application of an element of chance". Where a substantial element of chance is involved, it

appears to us that the fact that skill in operating the particular machine is helpful in attaining the end sought does not take the machine out of the type defined by the statute. With regard to the machines herein there is at least an "element of chance" involved, and we hold that these machines are within the class whose transportation in interstate commerce is prohibited by the statute.

The judgment must be reversed, and the machines herein involved, with their contents, must be ordered forfeited to the United States of America.

Reversed and remanded with direction to order forfeiture in accord herewith.