### UNITED STATES v. 19 AUTOMATIC PAY-OFF PIN-BALL MACHINES.
#### Civ. A. No. 3450.

United States District Court
W. D. Louisiana, Lake Charles Division.
June 23, 1953.

William J. Fleniken, E. V. Boagni, Shreveport, La., Hamblen & Bobbitt, Houston, Tex., for plaintiff.

A. C. Lesher, Jr., Houston, Tex., S. W. Plauche, Jr., Lake Charles, La., for defendant.

DAWKINS, District Judge.

On October 1, 1952, a libel or information was filed under Title 15 U.S.C.A. § 1171 et seq., Act of January 2, 1951, dealing with the shipping of gambling paraphernalia in interstate commerce. Some nineteen machines were seized as gambling devices which had been shipped in interstate commerce from Texas to Louisiana, in alleged violation of the provisions of said law. The prayer was that they be forfeited and turned over to the Attorney General for disposition in accordance with section 1611, Title 19 U.S.C.A.

On October 22, Albert H. Shannon, of Houston, Texas, appeared as claimant and denied that the machines, in the state in which they were shipped, were gambling devices within the meaning of said law. On the trial, it was conceded that all, at one time or another, had been; in that there were attached pay-off units. However, Shannon strenuously insisted that all of the machines had been "de-natured", that is, rendered innoxious for gambling purposes by having such mechanisms removed before being shipped, leaving them as what is known as "free play" machines.

The Act of January 2, 1951, Chapter 1194, § 1, 64 Stat. 1134, Title 15 U.S.C.A. § 1171 et seq., provides:

"(a) The term 'gambling device' means—(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

"(2) any machine or mechanical device *designed and manufactured* to operate by means of insertion of a coin, token, or similar object *and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property*; or

"(3) *any subassembly or essential part intended to be used in connection with any such machine or mechanical device.*" (Emphasis by the writer.)

Section 2, Title 15, § 1172, provides:

"It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession * * *".

Section 7, Title 15, § 1177, provides:

"Any gambling device *transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States.* * * *". (Emphasis by the writer.)

The proof offered by the Government was to the effect that each of the nineteen machines were so constructed that they could readily be converted into gambling devices, or pay-off machines, within the

meaning of the law at little expense by adding the pay-off mechanisms. The claimant and his expert did not dispute this possibility, but contended it would require more expense and take longer than the plaintiff claimed. Claimant also admitted that all of the machines had been, at some time before he acquired them, gambling devices but could not say whether they had been manufactured in that condition or not. He testified that the pay-off mechanisms had been taken out and destroyed before the machines were shipped.

▇▇▇ The question is, does the Act exclude these machines "designed and manufactured as gambling devices" notwithstanding the pay-off parts have been removed? It is obvious that the statute not only intended to reach what are commonly known as "slot machines", section 1, Title 15, § 1171, having a revolving drum or series of drums, which, by pressing a lever, are set in motion and stop in certain relations, automatically paying off when proper combinations turn up, but also pin-ball machines which likewise pay off when the player, through manipulation and chance, makes the required combination of points. The first type is described by subsection (a) of section 1 of the Act of January 2, 1951, and the latter type is described in subsection 2 of the said section 1(a) of the Act quoted above. This last subsection, like the first, reads:

> "Any machine or mechanical device *designed and manufactured* to operate by means of insertion of a coin * * and designed and manufactured so that when operated" it may pay off "as the result of the application of an element of chance * * *". (Emphasis by the writer.)

It is undoubtedly true that none of these machines described as gambling devices were outlawed from interstate commerce until the statute in question became effective. However, when it did go into effect, they acquired that status if "designed and manufactured to operate by the insertion of a coin * * *" as pay-offs, originally or by subsequent change to gambling devices, and the removal, shortly before or after the Act became effective, of the pay-off or other parts, could not serve to change that status. In fact, subparagraph 3 of section 1, Tit. 15, § 1171, quoted above, specifically prohibits the shipping of any "subassembly or assembly part *intended to be used in connection with such machines*". It would seem that this subparagraph 3 must be read in connection with subparagraph 2 immediately preceding, which contains the words "any machine or mechanical device designed and manufactured" to operate and pay off involving an element of chance.

It must be considered that the ease with which such machines can be disassembled and shipped as parts makes it possible to evade the law with little difficulty. Whenever such parts have been conveyed across state lines into one where, by sufference or connivance of the law enforcement agents, the gambling devices are allowed to operate (which, as a matter of common knowledge, is true in portions of Louisiana, notwithstanding a statute outlawing slot machines has been in effect for more than a quarter of a century), the owners could reassemble them and carry on the gambling practices which the law in question was designed to make more difficult by excluding them from the channels of interstate commerce.

▇▇▇ Counsel for the Government has cited and relies mainly upon the case of U. S. v. 24 Digger Merchandising Machines, 8 Cir., 202 F.2d 647. There the machine was not operated by the use of a coin placed in a slot but partly, for a limited time, by manipulation of the player. Nevertheless, the pay-off, it was found, involved an element of chance, which made it a gambling device. The Eighth Circuit Court of Appeals, with Judge Woodrough as the author, held it to be a gambling device within the meaning of the statute, which could not be evaded by leaving out use of a coin in a slot. Of course, it is contended by the claimant here that the changes which he or his vendors have made, i. e., removal of the pay-off mechanisms, eliminates altogether the gambling feature; but, as indicated above, this depends upon what may happen after these

machines have successfully run the gauntlet of interstate transportation. He argues that the Government failed to prove that all nineteen of the machines were originally "designed and manufactured" as pay-off or gambling devices within the meaning of the statute. However, the Government proved, in fact, claimant admitted, that all of them had at one time been pay-off devices, whether so manufactured or changed before he acquired them. He urges that the Government should go further and prove specifically that each was designed and manufactured for use in the manner which the statute condemns. However, it is believed that when the Government showed they had been used as such, its case was prima facia made out and the burden was upon the claimant to show which, if any, did not fall in that class, in order to prevail in his demand that they be released to him. It was his obligation to ascertain the facts which permitted or barred them from that commerce. Every type of pin-ball machine, including pay-off and free-play machines, have been outlawed in Texas, hence the reason for attempting to salvage such value as the devices might possess after the pay-off mechanisms were removed through removing the machines to Louisiana.

The demand of the claimant should be rejected and the nineteen machines should be confiscated as prayed for.