## UNITED STATES *v.* KORPAN.

No. 596.   Argued April 25, 1957.—Decided June 17, 1957.

*John F. Davis* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Beatrice Rosenberg* and *Robert G. Maysack.*

*Robert A. Sprecher* argued the cause for respondent. With him on the brief were *Simon Herr* and *Frank A. Karaba.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The respondent, Walter Korpan, was indicted in a Federal District Court in Illinois for willfully failing to pay the $250 per device tax imposed by 26 U. S. C. (Supp. IV) § 4461 on any person who maintains for use any gaming device.   For purposes of this tax, 26 U. S. C. (Supp. IV) § 4462 (a) defines gaming devices as:

"so-called 'slot' machines which operate by means of insertion of a coin . . . and which, by application

of the element of chance, may deliver, or entitle the person playing . . . the machine to receive cash, premiums, merchandise, or tokens." [1]

[1] In full the pertinent statutory provisions read as follows:

"§ 4461. Imposition of Tax.

"There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

"(1) $10 a year, in the case of a device defined in paragraph (1) of section 4462 (a);

"(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462 (a); and

"(3) $10 or $250 a year, as the case may be, for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device.

"§ 4462. Definition of Coin-Operated Amusement or Gaming Device.

"(a) In general.

"As used in sections 4461 to 4463, inclusive, the term 'coin-operated amusement or gaming device' means—

"(1) any amusement or music machine operated by means of the insertion of a coin, token, or similar object, and

"(2) so-called 'slot' machines which operate by means of insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens.

"(b) Exclusion.

"The term 'coin-operated amusement or gaming device' does not include bona fide vending machines in which are not incorporated gaming or amusement features.

"(c) 1-cent vending machine.

"For purposes of sections 4461 to 4463, inclusive, a vending machine operated by means of the insertion of a 1-cent coin, which, when it dispenses a prize, never dispenses a prize of a retail value of, or entitles a person to receive a prize of a retail value of, more than 5 cents, and if the only prize dispensed is merchandise and not cash or tokens, shall be classified under paragraph (1) and not under paragraph (2) of subsection (a)."

The evidence at the trial showed that Korpan maintained on his premises a number of coin-operated gambling machines. These machines were played by inserting a coin into the machine through a slot. The player was then able to shoot several balls onto a playing surface which was interspersed with pockets or holes. If he succeeded in getting balls into certain holes he received a varying number of free games. He had the option of either playing the free games or of cashing them in at a designated rate. By inserting extra coins the player could sometimes secure additional balls or increased "odds" (in other words, increase the number of free games he could win). The machines were equipped with electrical devices which over a period of time controlled the number of free games won.

The district judge found respondent guilty as charged and fined him $750. The Court of Appeals for the Seventh Circuit reversed, holding that respondent's machines did not come within the definition laid down by § 4462 (a)(2). 237 F. 2d 676. On the Government's petition we granted certiorari because the case raised important questions in the administration of the revenue laws. 352 U. S. 980. The issue before us is whether the machines maintained by petitioner were included within the definition given by § 4462 (a)(2).[2] For the reasons stated hereafter we believe that they were within that definition and that the judgment of the Court of Appeals setting aside Korpan's conviction on the ground that they were not must be reversed.

It is clear that respondent's machines were operated by the insertion of a coin and that persons playing them could receive cash for any free games won. The machines also involved an element of chance suffi-

---

[2] Respondent contends that § 4462 (a)(2) as interpreted by the District Court is unconstitutionally vague. This contention is without merit.

cient to meet the requirements of § 4462 (a)(2), although skill may have had some part in playing them successfully. In short, they were "slot-machine" gambling devices.

Respondent argues, however, that when Congress used the phrase "so-called 'slot' machines" in § 4462 (a)(2) it intended to restrict the scope of that section to those "slot machines" gambling devices colloquially known as "one-armed bandits." He describes the latter as machines in which the insertion of a coin releases a lever or handle which, in turn, when pulled activates a series of spring-driven drums or reels with various insignia painted thereon, usually bells and fruit, and which automatically dispense coins to a player when certain combinations of these insignia are aligned. The Government, on the other hand, takes the position that Congress intended to cover all "slot machines" which come within the specific requirements of § 4462 (a)(2). It argues that the qualifying phrase "so-called" was added because (1) the draftsmen were apprehensive that the term "slot-machine" might be a slang expression not accepted as proper English or (2) they wanted to cover every gambling device operated by the insertion of coins through a slot even though the device might go under a label other than "slot machine."

On its face the language of § 4462 (a)(2) and related sections does not manifest an intent to limit the application of the otherwise broad terms of § 4462 (a)(2) to any particular kind of "slot-machine" gambling device. The phrase "so-called 'slot' machine" is, if anything, more consistent with the position advanced by the Government than that taken by Korpan. And the remainder of § 4462 (a)(2), as well as § 4462 (c), has language which affirmatively suggests that § 4462 (a)(2) was designed to include all sorts of coin-operated gambling devices regard-

less of their particular structure or the method by which they paid off players.

This interpretation is supported by the relevant legislative history. Apart from the amount of tax imposed, § 4462 (a)(2) is substantially the same as its original predecessor, § 3267 of the Internal Revenue Code of 1939, as amended, 55 Stat. 722. Senator Clark, the sponsor of the amendment which became § 3267, declared during the Senate debates on his amendment that his objective was to impose a heavy tax on "any machine which returns any sort of a premium, and that was the intention of the amendment, and it was the intention of the committee in adopting it." [3] The Senate report which accompanied Clark's amendment stated:

> "The House bill places a special tax of $25 per year upon each coin-operated amusement or gaming device maintained for use on any premises.
>
> *"Your committee divides these devices into two categories.* Upon so-called pinball or other *amusement* devices operated by the insertion of a coin or token, the tax is reduced to $10 per year. Upon so-called slot machines, however, the tax is placed at $200 per year." [4]  (Emphasis added.)

Respondent contends that this report as well as similar language in other parts of the legislative history is indicative of an intent on the part of Congress to draw a distinction between "one-armed bandits" and other coin-operated gambling or amusement machines. [5] We interpret this history, however, as demonstrating a con-

---

[3] 87 Cong. Rec. 7301.

[4] S. Rep. No. 673, 77th Cong., 1st Sess. 21.

[5] For the legislative history of what became § 3267 see: H. R. Rep. No. 1040, 77th Cong., 1st Sess. 60; H. R. Rep. No. 1203, 77th Cong., 1st Sess. 18; S. Rep. No. 673, 77th Cong., 1st Sess. 21; 87 Cong. Rec. 6476, 7297–7307.

gressional purpose to place a heavy tax on all "slot-machine" gambling devices, regardless of their particular structure, and a substantially smaller tax on machines played purely for amusement which offered the player no expectation of receiving "cash, premiums, merchandise, or tokens."

The administrative interpretation of § 4462 (a) (2) and its predecessors adds additional strength to this view. In 1942 the Treasury Department published interpretative regulations which included so-called "pin-ball" gambling machines under § 4462 (a) (2).[6] This administrative ruling was publicized in the trade paper of the coin-operated machine industry. In both 1942 and 1954 the representatives of that industry complained to Congress about the Treasury's interpretation, which is still in effect, and asked that § 4462 (a) (2) be amended so that it expressly excluded "pin-ball" gambling machines.[7] In each instance Congress left the existing provisions of § 4462 (a) (2) standing, although, at the request of others in the industry, it did provide an exception for certain penny-operated gambling machines.[8]

If the respondent's position were adopted § 4462 (a) (2) would be restricted to a peculiar type of gambling device—the so-called "one-armed bandit"—even though ingenuity, a desire to avoid taxes, and technological

---

[6] 59 Treas. Reg. § 323.22, as amended by T. D. 5203, 7 Fed. Reg. 10835, Dec. 22, 1942.

[7] See Hearings before the House Committee on Ways and Means on Revenue Revision of 1942, 77th Cong., 2d Sess. 2055–2061, 2682–2688; Hearings before the Senate Committee on Finance on H. R. 7378, 77th Cong., 2d Sess. 1132–1141; Hearings before House Committee on Ways and Means on General Revision of the Internal Revenue Code, 83d Cong., 1st Sess. 2505–2522; Hearings before Senate Committee on Finance on H. R. 8300, 83d Cong., 2d Sess. 1874–1879.

[8] 56 Stat. 978–979.

progress provide a multitude of new devices which permit substantially the same kind of gambling but only with a different kind of coin-operated machine. We are convinced that Congress had no such purpose and meant only to distinguish between "slot-machines" operated as gambling devices and "slot-machines" which were used exclusively for amusement.

*Reversed.*

MR. JUSTICE DOUGLAS dissents from the conclusion that here pin ball machines are games of chance within the meaning of the statute.