United States
District Judge.

**UNITED STATES of America,
Appellant,**

v.

**20 "DEALER'S CHOICE" MACHINES AND COIN CONTENTS OF $3.50,
Appellee.**

**UNITED STATES of America,
Appellee,**

v.

**20 "DEALER'S CHOICE" MACHINES AND COIN CONTENTS OF $3.50,
Appellant.**

**Nos. 72–1976, 72–1977.**

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1973.

Decided Aug. 30, 1973.

Wistar D. Stuckey, Asst. U. S. Atty. (John K. Grisso, U. S. Atty., on brief),

for appellant in No. 72–1976 and for appellee in No. 72–1977.

Donald W. Tyler, Columbia, S. C. (Kermit S. King, Columbia, S. C., on brief) for appellee in No. 72–1976 and for appellant in No. 72–1977.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

By this action, the United States sought the forfeiture, for failure to pay the required tax,[1] of 20 "Dealer's Choice" mechanical poker machines, alleging them to be coin-operated gaming devices as defined in 26 U.S.C. § 4462(a)(1).[2] The district court found that the machines in question were coin-operated gaming devices within the statute. The court held, however, that the fifth amendment privilege was a bar to the forfeiture. United States v. 20 "Dealer's Choice" Machines and Coin Contents of $3.50, 341 F.Supp. 1147 (D. S.C.1972). We think the finding of the court that the machines are within the statutes was not clearly erroneous. But because we hold that the fifth amendment is not a bar to the taxation or forfeiture of the machines, the decision of the district court must be reversed.

### I.

■■ The machines in question were fully described by the district court, 341 F.Supp. at 1148–1150, and the description need not be repeated here. The district court held that in the operation of the machines there was a substantial element of chance, and that the element of chance was kept substantial even as the skill of a player increased. The machines are thus similar to those involved in United States v. Korpan, 354 U.S. 271, 77 S.Ct. 1099, · 1 L.Ed.2d 1337 (1957). "The machines also involved an element of chance sufficient to meet the requirements of [the statute], although skill may have had some part in playing them successfully." 354 U.S. at 273–274, 77 S.Ct. at 1101. It is urged on appeal that the element of chance must be inherent in the machine itself. This is not required. See Tooley v. United States, 134 F.Supp. 162, 167 (D.Nev.1955). There must be a substantial element of chance in operating the machines. See United States v. 24 Digger Merchandising Machines, 202 F.2d 647, 649–650 (8th Cir.), cert. denied, 345 U.S. 998, 73 S.Ct. 1140, 97 L.Ed. 1404 (1953). What must be inherent in the machine are gaming features to distinguish the machine from a vending machine under 26 U.S.C. § 4462(b). Harvey v. United States, 214 F.Supp. 80, 83–84 (D.Or. 1962). See Szybski v. United States, 220 F.Supp. 806, 810 (E.D.Wis.1963).

Since the findings of the district court are not clearly erroneous, we thus hold the machines to be coin-operated gaming devices within the statute.

### II.

As to the asserted fifth amendment defense, the district court found that to register these machines as coin-operated gaming devices would be an admission that they violate state statutes and would provide a link in the chain of evidence to prove guilt. The court thus held that the fifth amendment barred the forfeiture under Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed. 2d 906 (1968), and Haynes v. United

---

1. 26 U.S.C. § 4461 (1970), imposes a special tax of $250 per year for each coin-operated gaming device maintained for use on a person's premises.

2. 26 U.S.C. § 4462(a) provides:
   For purposes of this subchapter, the term "coin-operated gaming device" means any machine which is—

(1) a so-called "slot" machine which operates by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens, or
(2) . . .

States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 (1968), as applied to civil forfeiture proceedings by United States v. United States Coin & Currency [Angelini], 401 U.S. 715, 91 S.Ct. 1041, 28 L. Ed.2d 434 (1971). We disagree.

The Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), stated:

> The issue before us is *not* whether the United States may tax activities which a State or Congress has declared unlawful. The Court has repeatedly indicated that the unlawfulness of an activity does not prevent its taxation, and nothing that follows is intended to limit or diminish the vitality of those cases. . . . The issue is instead whether the methods employed by Congress in the federal . . . statutes are, in this situation, consistent with the limitations created by the privilege against self-incrimination guaranteed by the Fifth Amendment.

390 U.S. at 44, 88 S.Ct. at 700. We must determine whether the statutory methods in the present case are like those in *Marchetti-Grosso-Haynes* or like those we held enforceable despite fifth amendment objection in United States v. Walden, 411 F.2d 1109 (4th Cir.), cert. denied, 396 U.S. 931, 90 S.Ct. 271, 24 L. Ed.2d 230 (1969).

■ In *Marchetti* the statutes were "directed at a small number of people who are inherently suspect of illegal activities," and the area was permeated with criminal statutes.[3] The operation of coin-operated devices, such as those involved here, is not so universally prohibited by state criminal statutes as was the wagering involved in *Marchetti* and *Grosso*.[4] Nor is the statute directed at a small number of people. For example,

in 1969 the $250 special tax was paid on approximately 19,000 devices, while the occupational wagering tax was issued for only 3,527 persons. For the same period tax revenue from the coin-operated gaming devices totaled approximately $12,345,000, which is approximately three times greater than the wagering tax revenue involved in *Marchetti-Grosso* and six times greater than the narcotics tax revenue involved in *Leary*.

In *Walden*, where we held the fifth amendment privilege was not a defense to charges of violating the distilled spirits taxing statutes, we stated:

> However, unlike the situation in *Marchetti,* the record does not suggest a practice nor a congressional purpose of making available to state officers the information obtained. . . . Absent proof of such a practice, or at the very least, proof of purpose of federal agents to report . . . registrations to state prosecuting authority, appellants . . . fail to establish that they would have been substantially endangered by compliance with the federal statutes. That alone distinguishes *Marchetti-Grosso-Haynes*.

411 F.2d at 1112–1113. There is likewise absent in the present case any evidence of the practice of federal agents to report the acquisition of tax stamps to state authorities, and the congressional purpose is apparently that such information will not be made available. In 1968 Congress amended 26 U.S.C. § 6806 and 26 U.S.C. § 7273 so that the special tax stamp required of coin-operated gaming devices need not be conspicuously posted.[5] Likewise, the statutory requirement that a list of all persons who have paid special taxes be maintained for public inspection has been repealed,[6]

---

3. United States v. Walden, 411 F.2d 1109, 1111 (4th Cir.), cert. denied, 396 U.S. 931, 90 S.Ct. 271, 24 L.Ed.2d 230 (1969). *See* Leary v. United States, 395 U.S. 6, 13, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

4. *See, e. g.,* United States v. One Bally Bounty In-Line, etc., Pinball Mach., 261 F. Supp. 187 (D.Md.1966).

5. 26 U.S.C. § 6806 (1970), *formerly* 68A Stat. 831 (1954) ; 26 U.S.C. § 7273 (1970), *formerly* 68A Stat. 866 (1954).

6. 26 U.S.C. § 6107 (1970) was repealed by the Gun Control Act of 1968, Pub.L. No. 90–618, Title II, § 203(a), 82 Stat. 1235.

and such information is not generally available.[7] One of the reasons for the amendments and repeal of these statutes was to avoid the self-incrimination problems present in *Marchetti-Grosso-Haynes*.[8]

Since the coin-operated gaming devices taxes are not directed at a small group of persons whose activities are inherently suspect, and since there is no evidence that compliance with the federal statutes will provide a substantial danger of incrimination under state statutes, we hold that the fifth amendment is not a bar to the forfeiture* action. Accordingly, the decision of the district court is

Reversed.

---

7. *See* 26 C.F.R. § 301.9000–1 (1972).

8. Conference Rep.No.1956, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. & Admin.News 4435; S.Rep.No.1501, 90th Cong., 2d Sess. (1968).