UNITED STATES of America,
Appellant,

v.

TWENTY–EIGHT "MIGHTY PAYLOAD-ER" COIN–OPERATED GAMING DE-VICES, $1,626.06 in United States Coin and Currency, One Eight Foot by Twen-ty Foot Trailer, Serial Number Un-known, Bearing Iowa License 5/2 FX 3167, and Miscellaneous Carnival Prizes, and/or Jeffrey A. Blomsness,

Twenty-Four "Poker" Coin-Operated Gam-ing Devices, $2,247.29 in United States Coin and Currency, One Eight Foot by Fifteen Foot Trailer, Serial Number 1232, Bearing Delaware License T 75154, and Miscellaneous Carnival Prizes, and/or Lou Hall and Wayne Chambers,

Forty-Four "Sweepstakes" Coin-Operated Gaming Devices, $1,990.95 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Serial Number AGO 378303, Bearing Iowa License 5/2 FX 2728, and Miscellaneous Carnival Prizes, and/or Janice Mars,

Ten "Mighty Payloader" Coin-Operated Gaming Devices, $872.68 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Serial Number 266, Bearing Texas Trailer License D 46–593 and Miscellaneous Carnival Prizes, and/or Janice Mars,

Twenty-Eight "Mighty Payloader" Coin-Operated Gaming Devices, $1,287.75 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Se-rial Number 226–2460, Bearing Iowa License 5/2 FX 3652 and Miscellaneous Carnival Prizes, and/or Janice Mars,

Twenty-Eight "Mighty Payloader" Coin-Operated Gaming Devices, $889.62 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Se-rial Number H052, Bearing Florida Tem-porary License X 65034, and Miscellane-ous Carnival Prizes, and/or Janice Mars,

Twenty-Four "Crompton Penny Falls" Coin-Operated Gaming Devices, $55.50 in United States Coin and Currency, and Miscellaneous Carnival Prizes, and/or Robert Vogt and Carl Gatlin,

Sixty "Sweep-Stakes" Coin-Operated Gam-ing Devices, $2,027.60 in United States Coin and Currency, and Miscellaneous Carnival Prizes, and/or Jeffrey A. Blomsness, Appellees.

UNITED STATES of America, Appellee,

v.

TWENTY–EIGHT "MIGHTY PAYLOAD-ER" COIN–OPERATED GAMING DE-VICES, $1,626.06 in United States Coin and Currency, One Eight Foot by Twen-ty Foot Trailer, Serial Number Un-known, Bearing Iowa License 5/2 FX 3167, and Miscellaneous Carnival Prizes, and/or Jeffrey A. Blomsness, Appel-lants.

UNITED STATES of America, Appellee,

v.

TWENTY–FOUR "POKER" COIN–OPER-ATED GAMING DEVICES, $2,247.29 in United States Coin and Currency, One Eight Foot by Fifteen Foot Trailer, Se-rial Number 1232, Bearing Delaware License T 75154, and Miscellaneous Car-nival Prizes, and/or Lou Hall and Wayne Chambers, Appellants.

UNITED STATES of America, Appellee,

v.

FORTY–FOUR "SWEEPSTAKES" COIN–OPERATED GAMING DEVICES, $1,990.95 in United States Coin and Cur-rency, One Eight Foot by Twenty Foot Trailer, Serial Number AGO 378303, Bearing Iowa License 5/2 FX 2728, and Miscellaneous Carnival Prizes, and/or Janice Mars, Appellants.

UNITED STATES of America, Appellee,

v.

TEN "MIGHTY PAYLOADER" COIN–OPERATED GAMING DEVICES, $872.68 in United States Coin and Cur-

rency, One Eight Foot by Twenty Foot Trailer, Serial Number 266, Bearing Texas Trailer License D 46–593 and Miscellaneous Carnival Prizes, and/or Janice Mars, Appellants.

UNITED STATES of America, Appellee,

v.

TWENTY–EIGHT "MIGHTY PAYLOADER" COIN–OPERATED GAMING DEVICES, $1,287.75 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Serial Number 226–2460, Bearing Iowa License 5/2 FX 3652 and Miscellaneous Carnival Prizes, and/or Janice Mars, Appellants.

UNITED STATES of America, Appellee,

v.

TWENTY–EIGHT "MIGHTY PAYLOADER" COIN–OPERATED GAMING DEVICES, $889.62 in United States Coin and Currency, One Eight Foot by Twenty Foot Trailer, Serial Number H052, Bearing Florida Temporary License X 65034, and Miscellaneous Carnival Prizes, and/or Janice Mars, Appellants.

UNITED STATES of America, Appellee,

v.

TWENTY–FOUR "CROMPTON PENNY FALLS" COIN–OPERATED GAMING DEVICES, $55.50 in United States Coin and Currency, and Miscellaneous Carnival Prizes, and/or Robert Vogt and Carl Gatlin, Appellants.

UNITED STATES of America, Appellee,

v.

SIXTY "SWEEP–STAKES" COIN–OPERATED GAMING DEVICES, $2,027.60 in United States Coin and Currency, and Miscellaneous Carnival Prizes, and/or Jeffrey A. Blomsness, Appellants.

Nos. 79–1432, 79–1448 to 79–1455.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 5, 1979.

Decided June 11, 1980.

Sam Sexton, Jr., Fort Smith, Ark., for appellant.

Andrew S. Gordon (argued), Atty., Dept. of Justice, William G. Otis, Washington, D. C., W. H. Dillahunty, U. S. Atty., Little Rock, Ark., and J. Michael Fitzhugh, Asst. U. S. Atty., Western District of Arkansas, Fort Smith, Ark., on brief, for appellees.

Before GIBSON, Chief Judge,* and LAY and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

The district court determined that various coin-operated machines were taxable as gaming devices under 26 U.S.C. § 4461.[1]

---

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted and took senior status on December 31, 1979, before the opinion was filed. The Honorable Donald P. Lay became Chief Judge of the Eighth Circuit on January 1, 1980.

1. 26 U.S.C. § 4461 (repealed with respect to years beginning after June 30, 1980) requires the payment of $250 for each coin-operated gaming device. It provides:

(a) *In general.*—There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated gaming device (as defined in section 4462) at the following rates:

(1) $250 a year; and

(2) $250 a year for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device.

(b) *Exception.*—No tax shall be imposed on a device which is commonly known as a claw, crane, or digger machine if—

(1) the charge for each operation of such device is not more than 10 cents,

(2) such device never dispenses a prize other than merchandise of a maximum retail value of $1, and with respect to such device there is never a display or offer of any prize or merchandise other than merchandise dispensed by such machine,

(3) such device is actuated by a crank and operates solely by means of a nonelectrical mechanism, and

(4) such device is not operated other than in connection with and as part of carnivals or county or State fairs.

The court held, however, that the machines were not to be forfeited under 26 U.S.C. § 7302. The owners of the machines have appealed, arguing that the machines do not fall within the definition of 26 U.S.C. § 4462 for several reasons. The Government has cross-appealed, urging that the district court erred in not ordering forfeiture. We hold the machines are subject to the special tax, but that the district court erred in not ordering forfeiture.

On appeal the owners of the machines urge inter alia that the machines are games of skill and as such are not gaming devices; that the prizes won are less than the cost to the player and without the possibility of gain; therefore, there can be no tax under the statute.

*Facts.*

In September 1978, the machines in question were seized by the Internal Revenue Service (IRS) as gaming devices on which no tax had been paid, at the Fort Smith Fair held at Fort Smith, Arkansas.

The owners' basic argument on appeal[2] is the evidence fails to show that the machines in question were coin-operated[3] gaming devices within the meaning of 26 U.S.C. § 4462.[4] They urge the machines

2. The owners also argue that the district court was without jurisdiction to decide this forfeiture because the Government did not comply with 26 U.S.C. § 7401.

Section 7401 provides:
No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

Assuming, without deciding, the requirements of 26 U.S.C. § 7401 are jurisdictional, we find the requirements of the statute were met. Prior to filing the complaint, the United States Attorney for the Western District of Arkansas received from the director of legal services, on behalf of the chief counsel of the IRS, the necessary authorization to initiate forfeiture proceedings. 26 C.F.R. § 403.26(b) gives the power to authorize forfeiture proceedings to the director, general legal services division, office of chief counsel, Internal Revenue Service, or his delegate. The United States Attorney, the delegate of the Attorney General for purposes of instituting forfeiture proceedings, 28 U.S.C. § 547(4), filed the complaint. Thus, we find the Government fulfilled the statutory requirements.

The owners also argue on appeal the failure to specifically prove authorization renders jurisdiction of the district court defective. Unless the issue of authority is specifically challenged, which it was not, the Government's allegations of authority contained in the complaint are sufficient. *United States v. One 1941 Cadillac Sedan*, 145 F.2d 296, 299 (7th Cir. 1944); *United States v. Twenty-Two Firearms*, 463 F.Supp. 730 (D.Colo.1979). The owners argue that the action was initiated at the time the property was seized and that the subsequent letter by the chief counsel was too late to meet statutory requirements. The Internal Revenue Code consistently treats seizures and forfeitures separately throughout subchapter C of chapter 75. Since section 7401 refers only to forfeitures and not seizures, we hold the chief counsel's authorization prior to the filing of the complaint in the forfeiture proceeding was timely.

3. The phrase "coin operated" is not limited to electronic operations. *See* Rev.Rul. 58–346, 1958–2 C.B. 854.

4. 26 U.S.C. § 4462 (repealed effective with respect to years beginning after June 30, 1980) provides:

(a) *In general.*—For purposes of this subchapter, the term "coin-operated gaming device" means any machine which is—
(1) a so-called "slot" machine which operates by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens, or
(2) a machine which is similar to machines described in paragraph (1) and is operated without the insertion of a coin, token, or similar object.

(b) *Exclusions.*—The term "coin-operated gaming device" does not include—
(1) a bona fide vending or amusement machine in which gaming features are not incorporated;
(2) a vending machine operated by means of the insertion of a one cent coin, which, when it dispenses a prize, never dispenses a prize of a retail value of, or entitles a person to receive a prize of a retail value of, more than 5 cents, and if the only prize dispensed is merchandise and not cash or tokens; or
(3) a vending machine which—
(A) dispenses tickets on a sweepstakes, wagering pool, or lottery which is conducted by an agency of a State acting under authority of State law, and
(B) is maintained by the State agency conducting such sweepstakes, wagering pool, or lottery, or by its authorized employees or agents.

are games of skill, and the element of chance, if any, is insufficient to render the machines gaming devices under the statute. The machines involved in these forfeiture proceedings are referred to as the Poker Reno, Mighty Payloader, Crompton Penny Falls, and the Sweepstakes.

*Poker Reno Machines.*

■■■ The Poker Reno type machines were described and found to be gaming devices in *United States v. 20 "Dealer's Choice" Machines & Coin Contents of $3.50,* 341 F.Supp. 1147 (D.S.C.1972), *rev'd on other grounds,* 483 F.2d 474 (4th Cir. 1973). Similar machines have been found judicially and administratively to be gaming devices within the meaning of section 4462. *United States v. One Bally "Barrel-O-Fun" Coin-Operated Gaming Device,* 224 F.Supp. 794 (M.D.Pa.1963), *aff'd sub nom. Brozzetti v. Rogers,* 337 F.2d 857 (3rd Cir. 1964); Rev. Rul. 72–566, 1972–2 C.B. 583; Rev.Rul. 56–309, 1956–2 C.B. 893. The fact that the Poker Reno machines, unlike the machines in the cases cited, did not have an electrical control which, in the owners' words, "deprived the player of the opportunity to exercise his skill in playing the machine," is not decisive, since the amount of time involved in playing the machine does not alter the substantial element of chance involved. The evidence shows that the "skill" involved in playing was only a small factor and that the element of chance was a substantial factor in winning. The fact that there may be some skill involved in the game is not determinative. *United States v. Korpan,* 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337 (1957). When there is a substantial element of chance involved, the fact that skill in operating the machine is helpful in attaining the end sought does not take the machine out of the type defined by the statute. *See United States v. 24 Digger Merchandising Machines,* 202 F.2d 647, 649–50 (8th Cir.), *cert. denied,* 354 U.S. 998, 73 S.Ct. 1140, 97 L.Ed. 1404 (1953). The district court found that there was a substantial element of chance involved in the suc-

cessful operation of the Poker Reno machines. There was also evidence that the return on the machines was greater than the 10¢ investment. Play on these machines is initiated by insertion of a coin. In addition, the regulations specifically state that the Poker Reno type machines are covered by the statute. 26 C.F.R. § 45.-4462–1(a)(2)(v). The district court's finding that the Poker Reno machines are coin-operated devices within the meaning of section 4462 is not clearly erroneous.

*Mighty Payloader, Crompton Penny Falls and Sweepstakes Machines.*

The Mighty Payloader, Crompton Penny Falls and Sweepstakes machines are similar in their operation. The district court described the operation of those machines in the following manner:

> The Mighty Payloader contains a blade which constantly and steadily moves across the playing surface. On the playing surface are tokens, prizes and coins. At the front of the machine is a coin slot. When the player inserts a coin through the coin slot onto the playing surface, the coin may land on the playing surface, be pushed by the moving blade and thereby push one of the tokens, coins or prizes on the playing surface into the dispensing bin. The player has some control over where his coin lands on the playing board. Since the spot where the coin lands totally controls whether the player wins, he has some, but not total, control over whether he wins or loses.

*United States v. 28 "Mighty Payloader" Coin-Operated Gaming Devices,* No. 79–2016 (W.D.Ark., filed May 18, 1979).

The district court found these machines were operated by insertion of a quarter and that the value of the prizes varies but some were worth at least $1.00. It also found there is a substantial element of chance involved in playing these games. We cannot say the machines are exempt as a matter of law under 26 C.F.R. § 45.4461–1(a).

As noted in the discussion of the Poker Reno games, the fact that some skill is involved in successfully operating the machines does not mean that they are not covered by section 4462. *United States v. Korpan*, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337 (1957); *United States v. 20 "Dealer's Choice" Machines & Coin Contents of $3.50*, 483 F.2d 474 (4th Cir. 1973). Courts have held that there must be a substantial element of chance before the machines will be considered coin-operated gaming devices. *United States v. 20 "Dealer's Choice" Machines & Coin Contents of $3.50*, 483 F.2d 474 (4th Cir. 1973); *United States v. 24 Digger Merchandising Machines*, 202 F.2d 647 (8th Cir.), cert. denied, 354 U.S. 998, 73 S.Ct. 1140, 97 L.Ed. 1404 (1953).

It does not appear that there are any reported cases discussing the exact type of machines involved here. Rev.Rul. 59–293, 1959–2 C.B. 338 found that a "Rotary Pusher" which operates on some of the same principles is taxable as a coin-operated gaming device. Successful operation of claw or digger machines and pinball machines has been held to involve a substantial element of chance. *See, e. g., Johnson v. Phinney*, 218 F.2d 303 (5th Cir. 1955); *Boosalis v. Crawford*, 99 F.2d 374 (D.C.Cir.1938); *Tooley v. United States*, 134 F.Supp. 162 (D.Nev.1955); *United States v. 10, More or Less, Digger Machines*, 109 F.Supp. 825 (E.D.Mo.1952); see also 26 C.F.R. § 45.-4462–1(a)(2)(ii).[5] Analogies between the machines involved in these cases and the ones here are readily apparent.

Unlike the player of the bowling machine [6] who can place his puck anywhere on the playing surface prior to its release, the evidence showed the machines here placed limitations on the tossing of the coin, and the player does not have complete control over where the coin lands on the playing surface. In many ways the element of chance in the successful operation of these machines is more analogous to that of a pinball machine than a bowling machine.

As an additional ground for reversal, the owners argue the district court erred in allowing the IRS agents to give opinion evidence as to the element of chance in playing the machines. The district court did not base its decision solely on this testimony. The court observed at least one of the machines and listened to testimony on how all the machines operated. From that evidence it could have found that successful operation of these machines required a substantial element of chance. The district court's finding on the matter is not clearly erroneous.

As a final argument, the owners assert that when the prize returned is of no greater value than the amount of money required to operate the machine, section 4462 does not apply because it was the intent of Congress to exclude machines on which the potential of profit to the player has been eliminated. The testimony at the trial, including the testimony of the owners, establishes, however, that prizes of at least $1.00 could be obtained with a 25¢ play in all but the Poker Reno machine. The Poker Reno machine was operated with a dime with which one could win coupons; an accumulated number of coupons (numbers not specified) could be cashed in for prizes such as tool sets or portable radios. It is true that many of the prizes to be won operating the machines were minimal in value, *e. g.*, the list of items seized includes 295 playing cards, 250 sets of toy soldiers, 228 glass animals, 168 plastic plates, 108 banks, 94 ash trays, 953 chain bracelets, 144 bracelets, and 102 dogs on sticks. Nonetheless, the opportunity to win a greater premium did

---

**5.** We note that under certain circumstances not relevant here the owner of a claw or digger machine is not required to pay the $250 tax. 26 U.S.C. § 4461(b) (repealed with respect to years beginning after June 30, 1980).

**6.** Bowling machines allow the player control over almost all facets of the game. Their successful operation depends entirely on the skill of the player. Winning on those machines has been determined not to involve a substantial element of chance. Rev.Rul. 57–395, 1957–2 C.B. 781.

exist.[7] Rev.Rul. 56–309, 1956–2 C.B. 893, observes:

A coin-operated machine that, upon the insertion of a coin, delivers a ticket that entitles the player to a prize if the poker hand symbols on the ticket constitute a winning hand, is considered to be a coin-operated gaming device taxable under section 4461 of the Internal Revenue Code of 1954.

■ The district court determined the machines are coin-operated gaming devices. The district court's findings, that successful operation of these machines involves a substantial element of chance, that prizes greater than the value of the cost of a play can be obtained, and that the machines are coin-operated, are not clearly erroneous.

*The Cross-Appeal.*

The Government argues that the district court erred in not requiring the seized items to be forfeited under 26 U.S.C. §§ 7301, 7302. The district court held there are unique circumstances in this case which would make it fundamentally unfair for the Government to take the machines from their owners without first giving them the opportunity to pay the tax. The court discussed the following equitable considerations: (1) the IRS' failure to attempt to collect taxes on these types of machines generally; and (2) persons in the carnival business were unaware or misled by conduct and statements made by agents of the IRS. The court recited the fact that the IRS sent a letter from the Ogden, Utah Regional Office to a person who owned similar machines, stating that no tax was due if the prizes that could be won were less than $10.00 to $15.00.

■ 26 U.S.C. § 7302 provides:

It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

The Government contends that section 7302 does not allow a good faith defense. Having determined the machines are subject to the tax imposed by 26 U.S.C. § 4461 and the tax was not paid, it is clear the property has been used in violation of the internal revenue laws and is subject to forfeiture. Forfeiture statutes have an extraordinarily broad scope. *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

■ The innocence of the owner is not a defense to forfeiture, since the proceeding is in rem against the article to be forfeited. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680, 683, 94 S.Ct. 2080 (1974); *J. W. Goldsmith, Jr.-Grant Co. v. United States,* 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); *United States v. Bride,* 308 F.2d 470, 474 (9th Cir. 1962); *United States v. One 1958 Pontiac Coupe,* 298 F.2d 421, 422 (7th Cir. 1962); *United States v. Four (4) Pinball Machines,* 429 F.Supp. 1002 (D.Hawaii 1977); *United States v. One 1968*

---

7. Rev.Rul. 57–395, 1957–2 C.B. 395, in discussing the applicability of the tax on a coin-operated pinball machine, observed:

The determination of whether a coin-operated device is an amusement or gaming device cannot be made solely on the fact that prizes are awarded in connection with its operation. If the successful operation of a coin-operated device, with respect to which prizes are awarded, depends on the application of the element of chance, the machine is considered a gaming device.

*Ford Pickup Truck*, 310 F.Supp. 789 (S.D. Ala.1970).[8]

We hold the machines are coin-operated gaming devices within the meaning of 26 U.S.C. § 4462 and are subject to forfeiture pursuant to 26 U.S.C. § 7302.

The judgment of the district court is affirmed, but modified; the cause is remanded to the district court with directions that the judgment be amended to direct forfeiture of the machines.

---

8. The owners are not totally defenseless against what might appear to be an unfair and unreasonable forfeiture. 26 U.S.C. § 7327 provides:

The provisions of law applicable to the remission or mitigation by the Secretary or his delegate of forfeitures under the customs laws shall apply to forfeitures incurred or alleged to have been incurred under the internal revenue laws.

Remission or mitigation under the customs laws is set forth under 19 U.S.C. § 1618.