596 F.Supp. 1308 (1984)
UNITED STATES of America, Plaintiff,
v.
FORTY FOUR THOUSAND DOLLARS ($44,000.00), Defendant.
No. 83-715C(2).
United States District Court, E.D. Missouri, E.D.
October 9, 1984.
*1309 Joseph Moore, St. Louis, Mo., for plaintiff.
Lawrence J. Fleming, Clayton, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision after trial to the Court. The following memorandum is adopted as this Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.
This is a civil forfeiture action brought under 21 U.S.C. § 886(a) in which the United States seeks forfeiture of $44,000.00 seized from Stephen Clinansmith when he was arrested in St. Louis, Missouri, on February 2, 1983. Clinansmith showed Task Force Detective Louis H. Berry the $44,000.00 for purposes of purchasing some two hundred pounds of marijuana from Berry, who was conducting an undercover investigation. On May 4, 1983, Stephen Clinansmith was tried in the United States District Court for the Eastern District of Missouri and was found guilty of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Charlene Clinansmith, the wife of Stephen Clinansmith, filed a claim alleging that she was the sole owner of the $44,000.00. The claimant, Charlene Clinansmith, asserts that she was uninvolved and unaware of Stephen Clinansmith's unlawful activity, and that she had done all that could reasonably be expected to prevent the unlawful use of the money.
Claimant, prior to her marriage, was involved in an automobile accident in Michigan. As a result of this accident claimant filed a lawsuit seeking damages for personal injuries. In early May of 1978, after her marriage to Stephen Clinansmith, claimant settled the litigation for $65,000.00. After attorney's fees and expenses she received $42,076.00 as a net recovery.
Claimant testified (by deposition) that she used $17,000.00 of the settlement proceeds as a down payment for the purchase of a house from her parents.[1] The closing took place in November, 1978, and the contract and closing statement confirm that the house was purchased in the names of "Stephen C. Clinansmith and Charlene Clinansmith, his wife." The balance of $25,000.00 was then deposited in a certificate of deposit (CD) in both their names at the Community Bank of Washtenaw on May 17, 1978. On the same date claimant and *1310 her husband made an installment loan for $33,450.48 from the Community Bank of Washtenaw and secured it with the CD. The loan was for the purchase of a motor home, but the home itself was not collateral for the loan. She did not recall how it was titled. She also testified that despite any documents, she and her husband agreed that the money used for these things was hers.
Their home in Michigan was put up for sale in late June, 1982, in anticipation of their move to Austin, Texas. That move occurred in July and the sale of the house closed on August 2, 1982. The net proceeds of $22,086.60 were received by a check payable to both. Claimant states the check was cashed and the money placed in a safe with a combination lock. She further stated that the safe had been given to her by a friend while she was living in their house in Michigan and after moving to Austin it was kept in claimant's residence in her bedroom closet.
Claimant and her husband drove to Michigan in mid-November, 1982, to celebrate the wedding anniversary of her parents. While there they cashed the CD which, with accumulated interest, totalled $33,784.44 and from these funds paid the balance due of $8,336.01 on the installment loan.[2] The net amount of $25,448.43 was taken in cash, placed in a suitcase for their return trip to Austin. Claimant testified that this money was then placed in the safe with the other cash that had been there since August, a total of approximately $47,000.00. Further, that by January, 1983, the funds were reduced to $44,000.00 by her payments of rent, food and other purchases.
Claimant testified that her husband informed her that he was going to Michigan to visit his brother who was having business problems. She assumes he left the morning of February 2, 1983, because she went bowling and when she returned he was gone. Claimant also stated that her husband removed the entire contents of the box, $44,000.00, without her consent. In addition claimant stated that she did not at any time know that her husband was using the $44,000.00 in an attempt to purchase drugs. The Court finds that the testimony of claimant is not credible, and further holds that she did not meet her burden of proof in establishing the defense of innocent ownership, if such a defense exists.
In a proceeding under 21 U.S.C. § 881(a) the burden shifts to the claimant to absolve the property from culpability once the government establishes probable cause for forfeiture. United States v. $2,500 in United States Currency, 689 F.2d 10, 12 (2d Cir.1982); United States v. $4,255,625.39, 551 F.Supp. 314, 315, 323 (S.D.Fla.1982). In the case at bar there clearly exists probable cause for forfeiture. The government seized the money under circumstances that indicate it was being used in exchange for a controlled substance. Thus, claimant has the burden of establishing her right to the money.
Claimant's sole assertion in this forfeiture action is the so-called innocent ownership defense which allows the claimant to recover if he can establish either that the property was taken without the claimant's privity or consent, or (2) the owner was uninvolved and unaware of the wrongful activity and had done all that reasonably could be expected to prevent the proscribed use of the property. See United States v. One 1976 Lincoln Continental Mark IV, 584 F.2d 266, 268 (8th Cir.1978). The existence of such defense is a matter of controversy, and the law is unsettled with regard to its propriety. Id. See also, United States v. One 1973 Buick Riviera Auto, 560 F.2d 897, 900-901 (8th Cir.1977). But see, United States v. Twenty Eight *1311 "Mighty Payloader" Coin Operated Gaming Devices, 623 F.2d 510, 516 (8th Cir. 1980) (holding that in a tax forfeiture case the innocence of the owner is not a defense since the forfeiture action is an in rem proceeding against the property). It is not necessary for this Court to decide if the innocent ownership defense is available in that even if it were it is clear that claimant has not borne her burden of proving by a preponderance of the credible evidence that she did not know that the $44,000.00 was involved in the narcotics exchange business.
The credibility of claimant was severely impeached. Claimant throughout her deposition testimony on May 23, 1984, called the container in which she stored cash a safe with a combination lock. She further contends her husband did not know the combination which she kept in her jewelry box. Louis H. Berry, an officer of the St. Louis Police Department assigned to the Drug Enforcement Administration (DEA), testified as to the drug deal and arrest of Stephen Clinansmith as well as the interview of claimant in April, 1983. He also made a report of the latter and it has been received in evidence. In the interview Berry states that claimant said the funds were placed in a steel box with a combination lock securing it. The box was kept in her closet and only she and her husband knew the combination. Special Agent Timothy A. Brunholtz of the DEA was present during the interview with claimant and his testimony corroborated Berry's statements and report as to claimant's interview. No description of the "safe" or "box" as to size or weight was given.
Additionally, claimant testified that she knew Gary May, the person with whom her husband was arrested in St. Louis on drug charges. May lived in Indiana and was a friend of her husband for a couple of years. He had visited her husband during the time they lived in Michigan but she was unaware of the reason why he visited nor did she overhear any conversation. Although she had sufficient knowledge to be able to identify May, the contacts were strictly with her husband and they did not socialize with him. She denied any knowledge of drug dealings and thought May was, and might still be, in real estate.
In addition, claimant was not unschooled in matters of elementary money management. She and her husband purchased a house, a motor home, and invested in a CD. Thus, claimant knew that money could earn substantial interest when invested in a CD or a similar account. Indeed, in Michigan she had invested money and earned interest thereon. Despite this knowledge claimant did not invest the money but simply buried it in her closet. Given her knowledge of banks and financial matters, the Court cannot believe that claimant for no reason let her money lie fallow when it could have produced much fruit. Thus, this Court finds that claimant's testimony is not credible, and that there is insufficient reason to believe that the money was taken without her consent or that she was not aware that the $44,000.00 was involved in the distribution of marijuana. Claimant is, therefore, not an innocent owner. United States v. $4,255,625.39, 551 F.Supp. 314, 323 (S.D.Fla.1982). Judgment shall be entered for plaintiff.
NOTES
[1] Claimant's Exhibits B-1 and B-2 indicate a down payment of $14,075.90 and total charges paid by purchasers at closing of $15,055.69.
[2] The CD securing the installment note was from the Community Bank of Washtenaw and the copy of check number 15275 offered in evidence by claimant (Exhibit D-2) as receipt of the proceeds from the CD was drawn on the Michigan National Bank. The numbers on the check and the fact that the Michigan National Bank marked the note paid leads the Court to believe that there is a connection between these banks and check number 15275 does represent those proceeds.